Please be seated. Thank you. Please call the last case. Richard House v. Workers' Compensation Comm'n, 5-12-0065. You may proceed, Counsel. May it please the Court, Counsel, my name is Jonathan Cantrell. I represent Richard House, the appellant in this case. This case is a bilateral carpal tunnel claim arising out of a murder-trauma. Mr. House lost a report of commission on the issues of accident and causation. Essentially, causation is the focus of the analysis here. The standard of review is a manifest way to the evidence. Mr. House began working for the respondent in September 2009 as a material handler. He served in auto parts manufacturing plant. During arbitration, he described his job as using clamps similar in size to jumper cables with a heavy-duty spring. He would apply metal to the glass portion of the sunroof. He would apply these clamps 1,000 to 1,200 times per hand per shift. He testified that he worked 50 to 60 hours per week doing this job. How long was he in the employ of the company doing these procedures before the injury manifested itself? He initially sought treatment a little over two months after starting the job there. He started September 21st. November 30th is the first documentation of him treating with his general practitioner. His primary complaints were unrelated, but in the history, and that's in the record, he had secondary complaints about numbness, tingling in the first three fingers of both hands. He gave the treating practitioner the history. But your argument then is that this condition, the reported trauma caused by the work, manifested itself within two months of him working for the company. Yes, Your Honor. That's true. And that was not consistent with the testimony of Dr. Brown, was it? Dr. Brown's testimony, Your Honor, his report concludes that the bilateral carpal tunnel as demonstrated on the nerve conduction study, which took place in December, about two to three weeks after the initial treatment, and the petitioner was working this whole time, is that because the nerve conduction study showed severe bilateral carpal tunnel syndrome, it must have been preexisting. He thought that the... He was present for a long time before the age of 10 weeks to claim and work for the employer. In essence, it was a summary, correct? Correct, Your Honor. That's a summary. Although he does acknowledge a potential temporary increase in symptoms, and proceeding under an aggravation theory, I think that's enough even taking his IME report as credible. And I'll illustrate even a temporary increase in symptoms. For example, if the petitioner is going to work every day, and as he works, his symptoms progress, and initially he's just dealing with symptoms, and in this case it's important, because he testified he was asymptomatic before he started this job. And there's nothing in the record to refute that, that he was asymptomatic before he started this job. But if he's working every day, the symptoms progress, and even if those symptoms are temporary, when he goes home, let's say he wakes up and he's fine, but over the course of time, and he ended up doing this job four months, if the symptoms progress on a daily basis to where he's unable to continue working, and he needs medical treatment, then he's entitled to get that medical treatment. Well, I understand the argument, but one of the problems, didn't the claimant, didn't your client testify that he had never experienced any pain in his hands whatsoever prior to employment with the employer? I think, I can't remember the language verbatim, Your Honor. Isn't that basically what he said, he had no problems? I believe he did say that, Your Honor, yes. So where's his aggravation coming from? Well, he becomes symptomatic as a result of the work that he's doing. Well, if this is all so logical and makes such common sense, why didn't any of the petitioner's doctors render that causation to him? I don't know, Your Honor. That's your biggest problem, isn't it? Yes, Your Honor, it is. In other words, you want us on a manifest way to say that it's so obvious to a lay person that this caused it, that we will reverse in the face of the only medical opinion in the case that there was no causation. Well, that's a good summation of my argument, Your Honor, or my position. But I believe the decision, the commission decision, shows that they didn't properly weigh the evidence. They say the only medical evidence is the IMU report, and I think that suggests that they disregarded the so-called chain of events evidence, which the Supreme Court has stated is circumstantial evidence of causation. And we also have in the records in this case a nurse's note that shows that Dr. Morgan's office, who was the surgeon, attempted to get payment from the work comp carrier. And I believe that's circumstantial evidence of his opinion that this was a worker's comp injury and it was related to his employment. Otherwise, why would he attempt to collect payment from them? On the issue of causation and the treating doctors, was it a matter of them declining to give causation opinions, or were they just not asked? How did that come about? There were no depositions taken. They were just not asked. And in the records, the only thing we have is their histories, which the petitioner's history that he gave is consistent with his testimony, but there is no use of the words by the treating physicians, it is my opinion that this is a work-related accident. And that's why I think Arbitrator Dibble felt he should go the other way, but the way the decision was written and his decision was adopted by the commission, I think it shows that they did not clearly weigh or appropriately weigh the evidence by stating. The public view by the arbitrator is a failure of proof. I believe. Of causation by the claimant who has that burden. And I'm only speculating. And I understand the petitioner has that burden and that was the arbitrator's position that we didn't meet the burden. But our argument is that the evidence is so overwhelming, even without a physician using the magic words, that to conclude that there was not at least an aggravation of a preexisting condition is irrational. And if no rational trier of facts could have concluded the way that the commission did, I think that this court could overturn their decision. I think we've already touched on a lot of the issues. The case is cited in a brief. To be candid, I did not find any cases where manifest way of the evidence was, a lower finding was found to be against the manifest way of the evidence in a similar situation. I do think the facts are unique in this case. And the cases stand for the proposition that petitioner can prove his case through a chain of events, evidence, without any medical causation evidence, so-called medical causation evidence, which I only assume means a physician using the magic words. But I think the fact that the petitioner's testimony, which is corroborated by the histories he gave to two different treating physicians, the fact that that testimony and that history of being asymptomatic before he starts working there, that evidence being unrefuted, I think is very significant. And I don't think it's addressed in the commission's decision. I think it's kind of summarily dismissed and they adopt the IME report. But even if, like I said before, even if the IME report is adopted,  And I believe that's enough for an aggravation to be compensable. Again, just to point out, I'm sure the court's aware of this, but this is a 2010 claim, so it predates the changes in the Act for a carpal tunnel case. So a mere aggravation is enough for Mr. House's case, unless the court has- Just out of curiosity, did you argue that before the arbitration commission, the aggravation hearing? Yes, I did, Your Honor. It's in the brief before the commission. I don't think there are any. Thank you, Your Honor. I'll wrap up on rebuttal. Thank you, counsel. My name is Shelly Wilson. I represent Extra Help in this matter. As you know, I think the main issue for us here is whether the commission decision is against the manifest weight of the evidence. And it's my proposition that it simply isn't. The petitioner bore the burden of proof in this case and did not meet it. There is one medical opinion on the record in this case, and I would like to point out that that opinion came in through Dr. Brown's IME report. It was stipulated to at trial without a deposition. It is my position that if petitioner would have wanted to challenge Dr. Brown's opinions, then a cross-examined Dr. Brown would have been in order. By stipulating in his report and letting it into evidence, it stands uncontroverted. The opinions on medical causation in that report are unchallenged and undisputed. Now, petitioner's trying to argue basically that he's able to meet his burden of proof without any medical evidence to support it, based on a chain of events and common sense approach. But I don't think that's the case here, because we obviously have Dr. Brown, who's a board-certified orthopedic hand specialist. He treats everyday upper extremity injuries, including injuries such as this one. He performs carpal tunnel releases everyday. And he's, I think we can all agree, a reasonable mind that doesn't think that common sense rules the day in this case. So you're not saying he couldn't win on a chain of events argument, even in the absence of any causal connection testimony by his doctors, but you're saying the way that the evidence specifically overcomes that in any way. Yes. Even if you go down that road, Dr. Brown trumps that, I think. His opinions are credible. No one has challenged his opinions. His opinions are well-reasoned and they're supported by the evidence. He notes why he concludes what he concludes about causation. I'd like to talk about the aggravation theory. By the nature of that term, I think that there needs to have been some sort of symptomatic pre-existing condition that is ongoing and then made worse. That's what an aggravation is. There's no evidence of that here. Didn't Brown say that his carpal tunnel condition was chronic? It existed for a long period of time. Did he have this before he ever went to work? But if you take his testimony, he's never had any complaints before, and he didn't until he worked for my employer. Can you parse Brown? You want to rely on Brown to say that there is no causal connection. Why? Because it's a chronic pre-existing condition. But now if you have a chronic pre-existing condition, you can certainly aggravate it, can't you? I think you can, but I think the evidence in this case shows that. And I think even Dr. Brown says he calls a transient increase, which I'm not even sure rises to the level of an aggravation, quite frankly, if the condition returns to baseline. Regardless, there's no dispute to Dr. Brown's opinion. There's no medical evidence that was admitted by deposition from any of the treaters that would refute Dr. Brown's opinion on causation. Dr. Nexad, silent. Dr. Morgan, silent. And I think that to rely on a billing notation in a chart is pure speculation. The staff member of Dr. Morgan's office that made that notation could have done it without his knowledge. We don't know. His deposition was never taken. The custodian of records of that office's deposition was never taken. That staff member's deposition was not taken. To say that because they attempted to bill it a certain way that that meets the burden of proof of medical causation, I think falls significantly short. So in conclusion, I would say the Commission's decision is not against the manifest weight of the evidence. In fact, it is consistent with the credible evidence that was presented. The only medical opinion from an expert in this case is that of Dr. Brown, and that opinion stands uncontroverted. And so the Commission's decision I would respectfully request be affirmed. So you're saying Dr. Brown's position is that attaching 1,200 of these clamps to cables or whatever would create symptomology of an underlying condition and that after you go home it goes away? I believe that that's what Dr. Brown concludes. That while that may have caused a transient increase in his symptoms or a transient symptomatology, to use your word, that does not rule the day on causation. Thank you, Counsel. Thank you. You may reply. Thank you, Counsel. First of all, I respectfully disagree with the position that Dr. Brown's opinion is uncontroverted because we stipulated the admission of the report. I think the petitioner's testimony about the chain of events, how he became symptomatic, the fact that's corroborated in his treating physician's reports suggests that there was some evidence supporting the petitioner's position and there's still a weighing of the evidence that had to occur. And the Commission decision suggests that they believe the petitioner, if the underlying basis of their decision is that the petitioner presented no medical causation evidence, then they didn't properly weigh the evidence. And ignoring Dr. Morgan's attempt to collect from the work comp carrier is what's improper. It is circumstantial evidence. It's not a direct report, obviously. But circumstantial evidence is properly used in any cases, and all circumstantial evidence by its very nature involves a level of speculation. We just make the most logical inference. Just like when the IPI defines circumstantial evidence and says, you see a wet umbrella inside of a building, you can infer that it's raining outside. We see that a doctor tried to collect specifically from the work comp carrier, a treating doctor. We can't ignore that. The most logical inference is that that doctor believed that this was causally related to his employment. And the Commission decision does not show that they properly weighed the evidence. By summarily ignoring the evidence in support of plaintiff's condition being related. And in summary, it's our position that concluding that using these clamps that are similar to jumper cables, 1,000 to 1,200 times per day with each hand for 50 to 60 hours a week over the course of four months, that's unrefuted. To conclude that that doesn't at least aggravate someone's carpal tunnel syndrome, assuming it's preexisting, to make that conclusion is not rational. And that's why I believe the Commission's decision was against the manifest weight of evidence. And respectfully ask this Court to reverse and remand for a determination of what benefits Mr. House is entitled to. Thank you, Your Honor. Thank you, counsel, both for your arguments in the spanner of the particular advisement. Dispositional issue in due course. And the Court will stand in recess. Subject, call.